UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

GARY LA BARBERA and FRANK FINKEL,
Trustees of Local 282 International
Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training, and
Vacation Sick Leave Trust Funds,           REPORT AND
                                           RECOMMENDATION
                    Plaintiffs,
                                           CV 2007-1183 (FB)(MDG)
          - against -

INTERSTATE PAYROLL COMPANY INC. and
CENTRAL YANKEE CONTRACTING CORP.,

                    Defendants.

- - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

     Plaintiffs, the trustees of the Local 282 Welfare, Pension,

Annuity, Job Training and Vacation/Sick Leave Trust Funds (the

"Funds"), brought this action against defendants Interstate

Payroll Company Inc. ("Interstate Payroll") and Central Yankee

Contracting Corp. ("Central Yankee") (collectively "defendants")

to recover delinquent benefit contributions, interest, liquidated

damages and attorneys' fees.  The Honorable Frederic Block granted

plaintiffs' motion for entry of default judgment and referred the

motion to me to report and recommend on the relief to be awarded.

See ct. doc. 16.


                            BACKGROUND

     The facts pertinent to this decision are undisputed and are

set forth in plaintiff's complaint ("Compl.") (ct. doc. 1), the

Affirmation of Avram H. Schreiber dated December 12, 2007

("12/12/07 Schreiber Aff.") (ct. doc. 8) and the Affirmation of

Mr. Schreiber dated December 19, 2007 ("12/19/07 Schreiber Aff.")

(ct. doc. 13) (collectively "Schreiber Affs.").

The Funds are multi-employer employee benefit plans

established for the purpose of providing welfare, pension,

annuity, job training, vacation and sick leave benefits to

members of Local 282 of the International Brotherhood of

Teamsters ("Local 282").  See Compl. at ¶¶ 2, 4.  The plaintiff

trustees administer the Funds pursuant to a Restated Agreement

and Declaration of Trust (the "Trust Agreement") which requires

contributions to be made to the Funds in accordance with a

collective bargaining agreement to which the employers are

parties.  Schreiber Affs., Exh. E (Trust Agreement) at art. VIII

§ 13, art IX § 1.  In 2006, defendants each executed a Memorandum

of Agreement (the "MOAs") agreeing to be bound for the period

from July 1, 2006 through June 30, 2009 to the terms of a

collective bargaining agreement (the "CBA") negotiated between

Local 282 and the General Contractor's Association, which

incorporates by reference the Trust Agreement.  12/12/07

Schreiber Affs. at ¶¶ 5-6, Exhs. B (CBA) at § 13(G), C (MOA).

Under the CBA, defendants are required to pay benefit

contributions to the Funds based on the number of hours worked by

their employees.  See Compl. at ¶ 8.  Defendants are also

required to submit remittance reports to the Funds listing all

hours worked by covered employees which the Funds rely on to

determine their contribution liability.  <u>See</u> Trust Agreement at art. IX, § 1(c).  The CBA provides that any employer "who has not posted a Surety Bond, and is not in compliance with this Section 14 - Surety Bond - shall pay all benefits . . . on a weekly basis."  <u>See</u> CBA at § 14(A).  Since defendants did not post surety bonds, they were required to submit remittance reports and make contributions on a weekly basis.  Schreiber Affs. at ¶ 8.

The Funds are entitled to interest on any delinquent contributions "at the rate of 1½ percent per month."  <u>See</u> Schreiber Affs., Exh. F (interest rate amendment).  The Trust Agreement also provides for liquidated damages equal to the greater of:  additional interest on the unpaid contributions or twenty percent of the unpaid contributions.  Trust Agreement at art. IX § 3(d).

Plaintiffs allege that Interstate Payroll submitted late payments and remittance reports for many weeks between November 3, 2006 and October 23, 2007, failed to pay contributions for the week ending April 17, 2007 and underpaid contributions for the week ending March 6, 2007.  <u>See</u> 12/12/07 Schreiber Aff. at ¶¶ 13-46, 48.

As to Central Yankee, plaintiffs claim that it submitted late payments for several weeks between November 14, 2006 and October 23, 2007, underpaid certain contributions between September 2006 and May 2007 and failed to report and pay contributions for one employee for November and December 2006 and April, July and August 2007.  <u>See</u> 12/19/07 Schreiber Aff. at

¶¶ 13-30, 32-33.

Plaintiffs commenced this action on March 21, 2007 and served defendants with the summons and complaint by serving their managing agent. <u>See</u> ct. doc. 5. Since New York law permits personal service upon a corporation by service upon its managing agent, I find that service was properly effectuated upon defendants. <u>See</u> N.Y. C.P.L.R. § 311(a)(1); <u>see</u> <u>also</u> Fed. R. Civ. P. 4(h)(1)(B). Because defendants have not appeared, default is properly entered against them.

DISCUSSION

I. <u>Legal Standards Governing Default</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. <u>Greyhound</u>, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." <u>Id.</u>

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. In determining damages not susceptible to simple mathematical calculation, Fed.

R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. <u>Action S.A. v. Marc Rich and Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. Conticommodity Serv, Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. <u>Au Bon Pain</u>, 653 F.2d at 65; <u>Directv, Inc. v. Hamilton</u>, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II. <u>Misjoiner of Defendants</u>

Under Federal Rule of Civil Procedure 20(a),[1] a plaintiff may join parties only in those circumstances where plaintiff asserts that the right to relief arises out of (1) the same transaction, occurrence or series of occurrences and (2) any question of law or fact common to all defendants will arise in the action. This test is in the conjunctive; both prongs of Rule 20 must be satisfied for joinder to be proper. In all other circumstances, joinder of parties in one action is improper. <u>Nassau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Co.</u>, 497 F.2d 1151, 1154 (2d Cir. 1974).

Although the claims against each defaulting defendant share

---

[1] Fed. R. Civ. P. 20(a)(2) states: "Persons . . . may be joined in one action as defendants if: any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

a common question of law - whether the failure to pay benefit contributions when they are due violates ERISA - there are no allegations that plaintiffs' claims arise out of the same transaction or that the defendants acted jointly or conspired with each other.  See Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75, 76 (D. Conn. 1998).  Plaintiffs do not provide any reason for the joinder of claims against the two defendants in this action, though this Court notes that the same person apparently signed the MOAs discussed above.  Nevertheless, since Judge Block has already granted plaintiffs' motion for entry of default judgment and each defendant's default establishes their separate liability, I will report and recommend on damages.

III. Liability of Defendants

The Funds are multi-employer employee benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., while Interstate Payroll and Central Yankee are employers under the terms of that statute.  See 29 U.S.C. §§ 1002(3), (5) and (37), 1132(d)(1), 1145.  The plaintiff trustees, as "fiduciaries" of the Funds, may bring a civil action to enforce the provisions of a plan.  See 29 U.S.C. §§ 1002(21)(A), 1132(a)(3).

ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due" and to make records "available for examination."  29 U.S.C. §§ 1027, 1059(a).  In addition, section 515 of ERISA

-6-

requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Defendants were required by the CBAs to comply with requirements in the Trust Agreement, to submit remittance reports and to pay fringe benefit contributions to the Funds.

It is undisputed that Interstate Payroll failed to submit any contributions for the week ending April 17, 2007, underpaid contributions for the week ending March 6, 2007 and was late in submitting remittance reports and payments for several weeks between November 3, 2006 and October 23, 2007. Similarly, it is undisputed that Central Yankee submitted late payments for several weeks between November 14, 2006 and October 23, 2007, underpaid certain contributions for September 2006 through May 2007 and failed to report and pay contributions for an employee for November and December 2006 and April, July and August 2007.

Although plaintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed on March 21, 2007, see Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995) ("no [section 1132(g)(2)] suit can be commenced in the absence of unpaid contributions"), a contractual basis exists for recovering interest and attorneys' fees for those untimely

contributions under the Trust Agreement. <u>Operating Eng'rs Local</u>
<u>139 Health Benefit Fund v. Gustafson Constr. Corp.</u>, 258 F.3d 645,
654 (7th Cir. 2001) (Fund could enforce a plan's provisions
imposing interest and liquidated damages on late contributions
paid before the suit was brought even where § 1132(g)(2) did not
apply); <u>Mich. Carpenters Council Health & Welfare Fund v. C.J.</u>
<u>Rogers, Inc.</u>, 933 F.2d 376, 390 (6th Cir. 1991) ("a fund has a
valid claim for late payment and/or audit damages pursuant to its
collective bargaining agreements with defendants"); <u>LaBarbera v.</u>
<u>T&M Specialties Ltd.</u>, No. CV-06-5022, 2007 WL 2874819, at *2
(E.D.N.Y. Sept. 27, 2007); <u>Bd. of Trs. of Local 41, Intern.</u>
<u>Broth. of Elec. Workers Health Fund v. Zacher</u>, 771 F. Supp. 1323,
1336 (W.D.N.Y. 1991). The Trust Agreement provides that "an
Employer in default for five working days shall be obligated to
pay interest, ... together with attorney's fees, auditor's fees
and liquidated damages." Trust Agreement at art. IX § 3. Thus,
defendants are liable to the Funds under ERISA and for breach of
the Trust Agreement.

I further note that plaintiffs request damages relating to
certain contributions that did not become due until after the
complaint was filed on March 21, 2007. Rule 54(c) of the Federal
Rules of Civil Procedure generally limits a plaintiff's recovery
to the relief sought in the complaint. <u>See</u> Fed. R. Civ. P. 54(c)
("A judgment by default must not differ in kind from or exceed in
amount, what is demanded in the pleadings."). Therefore, damages
that accrued during the pendency of the litigation can be awarded

only if the complaint put the defendants on notice that plaintiffs may seek additional damages for contributions that became due and owing. See Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007); T&M Specialties, 2007 WL 2874819, at *3; Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Here, the Complaint's "Fourth Claim for Relief" specifically states that "[d]uring the course of the instant action, additional contributions and/or delinquency charges may become due and owing" and requests that such damages be included in this action. Compl. at ¶ 21. The Wherefore Clause of the Complaint similarly demands "damages in the amount of any additional contributions and/or delinquency charges which may become due and owing during the course of the instant action." Id. at 6. Thus, I find that defendants had sufficient notice that they could be held liable for contributions and damages that became due and owing after the filing of the complaint through the date of entry of default.

IV. Determination of Damages

Section 502(g)(2)(B) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of -- (I) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent ... of the [unpaid contributions]; (D) reasonable attorney's fees and costs of the action ....

-9-

29 U.S.C. § 1132(g)(2).  As discussed above, the Trust Agreement provides a remedy for those delinquent contributions that were paid prior to the filing of the complaint.

A. <u>Unpaid Contributions</u>

<u>Interstate Payroll</u>

The Funds are entitled to recover unpaid contributions for the week ending April 17, 2007.  Plaintiffs based their claim for damages on the data contained in a remittance report submitted by Interstate Payroll.  <u>See</u> 12/12/07 Schreiber Aff. at ¶ 30, Exh. V (remittance report).  Since the calculations are based on data submitted by defendant and formulas to which the defendant is contractually bound, plaintiffs have provided sufficient information for determination of damages.  Thus, I recommend that plaintiff be awarded $5,523.00 for unpaid benefit contributions for the week ending April 17, 2007 as reflected in the remittance report submitted for that week.

Plaintiff also claims that Interstate Payroll underpaid contributions for the week ending March 6, 2007.  Both plaintiffs and plaintiffs' counsel sent Interstate Payroll statements of account notifying it of the underpayment to which there were no objections.  <u>See</u> 12/12/07 Schreiber Aff., Exh. NN (Letters to Interstate Payroll dated May 21 and 24, 2007).  Although plaintiffs failed to submit the remittance report to substantiate the amount of damages under ERISA, plaintiffs assert a claim for account stated and have attached the letters sent to Interstate Payroll as exhibits to their damages submission.  Compl. at ¶ 17;

12/12/07 Schreiber Aff., Exh. NN.  To recover on a claim of an account stated, plaintiff must demonstrate "'an agreement between the parties to an account based upon prior transactions between them . . . .'"  LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999) (quoting Chisholm-Ryder Co. v. Sommer & Sommer, 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (4th Dep't 1979)).  "Such an agreement may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time' or 'if the debtor makes partial payment.'"  Id. (quoting Chisholm-Ryder, 421 N.Y.S.2d at 457).  This suffices to establish an implied agreement between the parties as to the existence and amount of the balance due.  See Thornapple Assocs. v. Sahagen, No. 06 Civ. 6412, 2007 WL 747861, at *3-*4  (S.D.N.Y. Mar. 12, 2007); Leepson v. Allan Reilly Co., Inc., No. 04 Civ. 3720, 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006).  The statements of account demonstrate that the principal owed is $6,502.92.[2]

Central Yankee

Plaintiffs allege that Central Yankee underpaid certain contributions between September 2006 and May 2007.  Plaintiffs sent Central Yankee an invoice stating an account of $5,468.78 to which there was no objection.  See 12/19/07 Schreiber Aff., Exh. X (Letter to Central Yankee dated July 12, 2007).  In addition, plaintiff claims that Central Yankee underpaid contributions for

_____

[2] The outstanding principal includes an overpayment of $9.20 to the Job Training Fund.  Mr. Schreiber incorrectly calculated the amount due as $6,312.12.

employee John Dee, Jr. for November and December 2006 and April, July and August 2007 in the amount of $3,999.24 as reflected in a letter to defendant sent by plaintiffs' counsel to which there was no objection. See id., Exh. Y (Letter to Central Yankee dated October 25, 2007). Accordingly, plaintiffs have established claims for account stated in the amounts of $5,468.78 and $3,999.24.

B. Interest

The amount of interest due for unpaid contributions must be "determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2)(B). Pursuant to an amendment to the Trust Agreement, the Funds are entitled to interest on delinquent benefit contributions "at the rate of 1 ½% per month of each monthly amount due for each month to the Trustees from the first day of the month when the payment is due to the date when payment is made . . . ."[3] Interest Rate Amendment.

Accordingly, I recommend awarding interest as follows:

Interstate Payroll

| Pay Period | Late Payments | Per Diem | Delinquency Period | Days | Interest |
|---|---|---|---|---|---|
| 11/7/06 | $ 2,383.26 | $1.18 | 11/1/06– 12/19/06 | 48 | $     56.64 |
| 11/21/06 | $ 2,488.52 | $1.23 | 11/1/06– 12/19/06 | 48 | $     59.04 |

---

[3] Plaintiff incorrectly seeks interest from the date payment was due.

| | | | | | |
|---|---|---|---|---|---|
| 11/28/06 | $ 2,205.78 | $1.09 | 12/1/06–12/19/06 | 18 | $ 19.62 |
| 12/5/06 | $ 213.62 | $ .11 | 12/1/06-2/5/07 | 66 | $ 7.26 |
| 12/12/06 | $ 427.24 | $ .21 | 12/1/06-2/5/07 | 66 | $ 13.86 |
| 12/19/06 | $ 1,179.95 | $ .58 | 12/1/06-2/13/07 | 74 | $ 42.92 |
| 12/26/06 | $ 875.79 | $ .43 | 1/1/07-2/20/07 | 50 | $ 21.50 |
| 1/2/07 | $ 4,753.13 | $2.34 | 1/1/07-3/9/07 | 67 | $ 156.78 |
| 1/16/07 | $ 8,747.04 | $4.31 | 1/1/07-3/19/07 | 77 | $ 331.87 |
| 1/23/07 | $ 8,066.53 | $3.98 | 1/1/07-3/19/07 | 77 | $ 306.46 |
| 1/30/07 | $ 7,147.63 | $3.52 | 2/1/07-4/2/07 | 60 | $ 211.20 |
| 2/6/07 | $ 7,882.31 | $3.89 | 2/1/07-4/2/07 | 60 | $ 233.40 |
| 2/13/07 | $ 7,289.10 | $3.59 | 2/1/07-4/2/07 | 60 | $ 215.40 |
| 2/20/07 | $ 7,406.35 | $3.65 | 2/1/07-4/2/07 | 60 | $ 219.00 |
| 2/27/07 | $ 8,384.32 | $4.13 | 3/1/07-4/12/07 | 42 | $ 173.46 |
| 4/10/07 | $ 1,328.72 | $ .66 | 4/1/07-6/11/07 | 71 | $ 46.86 |
| 4/17/07 | $ 5,523.46 | $2.72 | 4/1/07-3/31/09 | 730 | $ 1,985.60 |
| 4/24/07 | $ 4,727.11 | $2.33 | 4/1/07-6/11/07 | 71 | $ 165.53 |
| 5/8/07 | $ 7,520.68 | $3.70 | 5/1/07-6/25/07 | 55 | $ 203.50 |
| 5/15/07 | $ 8,470.08 | $4.18 | 5/1/07-7/6/07 | 66 | $ 275.88 |
| 6/19/07 | $ 9,840.15 | $4.85 | 6/1/07-8/2/07 | 62 | $ 300.70 |
| 6/26/07 | $ 8,311.44 | $4.10 | 7/1/07-8/2/07 | 32 | $ 131.20 |
| 7/17/07 | $ 8,971.20 | $4.42 | 7/1/07-8/21/07 | 51 | $ 225.42 |
| 7/24/07 | $ 9,575.56 | $4.72 | 7/1/07-9/6/07 | 67 | $ 316.24 |
| 7/31/07 | $12,317.47 | $6.07 | 8/1/07-9/10/07 | 40 | $ 242.80 |
| 8/7/07 | $ 9,953.77 | $4.91 | 8/1/07-10/9/07 | 69 | $ 338.79 |
| 8/21/07 | $10,853.36 | $5.35 | 8/1/07-9/24/07 | 54 | $ 288.90 |
| 8/28/07 | $ 9,513.55 | $4.69 | 9/1/07-10/4/07 | 33 | $ 154.77 |
| 9/18/07 | $10,004.23 | $4.93 | 9/1/07-10/24/07 | 53 | $ 261.29 |
| 9/25/07 | $ 5,367.38 | $2.65 | 10/1/07–10/31/07 | 30 | $ 79.50 |

| 9/25/07 | $3,363.16 Annuity | $1.66 | 10/1/07-11/9/07 | 39 | $ 64.74 |
| 10/19/07 | $10,348.78 | $5.10 | 10/1/07-11/26/07 | 56 | $ 285.60 |
| 10/26/07 | $ 9,190.31 | $4.53 | 11/1/07-12/3/07 | 32 | $ 144.96 |
| Pay Period | Unpaid Payments | Per Diem | Delinquency Period | Days | Interest |
| 3/07 | $ 6,312.12 (5/21/07 ltr) | $3.11 | 3/1/07-3/31/09 | 761 | $ 2,366.71 |
| **TOTAL** | | | | | **$ 9,947.70** |

## Central Yankee

| Pay Period | Late Payments | Per Diem | Delinquency Period | Days | Interest |
| --- | --- | --- | --- | --- | --- |
| 11/14/06 | $ 2,438.40 | $1.20 | 11/1/06-12/19/06 | 48 | $ 57.60 |
| 12/12/06 | $ 2,715.35 | $1.34 | 12/1/06-2/2/07 | 63 | $ 84.42 |
| 12/19/06 | $ 2,548.84 | $1.26 | 12/1/06-2/2/07 | 63 | $ 79.38 |
| 12/26/06 | $ 2,288.23 | $1.13 | 1/1/07-2/2/07 | 32 | $ 36.16 |
| 6/19/07 | $ 2,567.00 | $1.27 | 6/1/07-8/2/07 | 62 | $ 78.74 |
| 6/26/07 | $ 2,773.27 | $1.38 | 7/1/07-8/2/07 | 32 | $ 44.16 |
| 7/17/07 | $ 3,497.83 | $1.72 | 7/1/07-8/20/07 | 50 | $ 86.00 |
| 7/24/07 | $ 2,705.08 | $1.33 | 7/1/07-9/4/07 | 65 | $ 86.45 |
| 7/31/07 | $ 2,870.30 | $1.42 | 8/1/07-9/14/07 | 44 | $ 62.48 |
| 7/07 | $ 198.82 (Dee, Jr.) | $ .10 | 7/1/07-2/28/07 | 608 | $ 60.80 |
| 8/14/07 | $ 1,132.10 | $ .56 | 8/1/07-9/25/07 | 55 | $ 30.80 |
| 8/21/07 | $ 1,132.10 | $ .56 | 8/1/07-9/25/07 | 55 | $ 30.80 |
| 8/28/07 | $ 1,132.10 | $ .56 | 9/1/07-10/4/07 | 33 | $ 18.48 |
| 9/18/07 | $ 1,358.52 | $ .67 | 9/1/07-10/24/07 | 53 | $ 35.51 |
| 9/25/07 | $ 1,489.15 | $ .73 | 10/1/07-10/31/07 | 30 | $ 21.90 |

| Pay Period | Unpaid Payments | Per Diem | Delinquency Period | Days | Interest |
|---|---|---|---|---|---|
| 10/16/07 | $ 1,132.10 | $ .56 | 10/1/07–11/19/07 | 49 | $ 27.40 |
| 10/23/07 | $ 1,132.10 | $ .56 | 10/1/07–11/26/07 | 56 | $ 31.36 |
| Pay Period | Unpaid Payments | Per Diem | Delinquency Period | Days | Interest |
| 9/06 | $ 91.00 (7/12/07 ltr) | $ .04 | 9/1/06–3/31/09 | 942 | $ 37.68 |
| 10/06 | $ 2,528.09 (7/12/07 ltr) | $1.25 | 10/1/06–3/31/09 | 912 | $ 1,140.00 |
| 11/06 | $ 2,759.92 (Dee, Jr.) | $1.36 | 11/1/06–3/31/09 | 881 | $ 1,198.16 |
| 11/06 | $ 2,799.85 (7/12/07 ltr) | $1.38 | 11/1/06–3/31/09 | 881 | $ 1,215.78 |
| 12/06 | $ 96.30 (Dee, Jr.) | $ .05 | 12/1/06–3/31/09 | 851 | $ 42.55 |
| 4/07 | $ 943.60 (Dee, Jr.) | $ .47 | 4/1/07–3/31/09 | 730 | $ 343.10 |
| 5/07 | $ 233.40 (7/12/07 ltr) | $ .12 | 5/1/07–3/31/09 | 700 | $ 84.00 |
| **Total** | | | | | **$ 4,933.71** |

C.  Liquidated Damages

Section 502(g)(2)(C) of ERISA also provides for additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of -- (I) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)."  29

U.S.C. § 1132(g)(2)(C). The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA. <u>Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan</u>, No. 05 Civ. 6819, 2006 WL 1292780, at *4 (S.D.N.Y. May 11, 2006); <u>see also</u> <u>Idaho Plumbers & Pipefitters v. United Mech.</u>, 875 F.2d 212, 215 (9th Cir. 1989). Thus, the Funds are entitled pursuant to ERISA to liquidated damages for contributions that remain unpaid or that were not paid until after this suit was filed.

However, the Funds also seek liquidated damages for the late-paid contributions that were paid prior to the suit being filed. As discussed above, plaintiffs are not entitled to statutory remedies under 29 U.S.C. § 1132(g)(2) for contributions paid prior to suit. Therefore, any liability for liquidated damages for these late-paid contributions must stem from one of the labor agreements. Article IX, section 3 of the Trust Agreement provides for "[a]dditional damages equal to the greater of "(1) [t]he amount of interest charged on the unpaid contributions, or (2) [l]iquidated damages in the form of 20 percent of the unpaid contributions" where an employer is in default for five working days.

I recommend denying such additional damages on this record. Many courts which have considered an award of liquidated damages under labor contracts have recognized the concomitant need to "examine whether the liquidated damages provision in the

operative collective bargaining agreements constitute a penalty under the federal common law." In re Michigan Carpenters Council Health & Welfare Fund, 933 F.2d 376, 390 (6th Cir. 1991) (citing Idaho Plumbers, 875 F.2d at 217-18); see also United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc., 519 F.2d 331, 337 (7th Cir. 1975);[4] Alliance Elec., Inc. v. Local Union No. 98, Int'l Broth. of Elec. Workers, NO. CIV. A. 91-6892, 1992 WL 358072, at *9 (E.D. Pa. Oct 20, 1992); Zacher, 771 F. Supp. at 1334-35. In order to be enforceable, a liquidated damages provision in a labor agreement must satisfy two conditions: (1) "the harm caused by the breach must be very difficult or impossible to estimate" and (2) "the amount fixed must be a reasonable forecast of just compensation for the harm caused." Bricklayers Pension Trust Fund v. Rosati, Inc., 23 Fed.App'x 360 (6th Cir. 2001); Michigan Carpenters, 933 F.2d at 390; Idaho Plumbers, 875 F.2d at 216; see also Zacher, 771 F. Supp. at 1334-35 (enforceability of liquidated damages provision

---

[4] While not expressly overruling Thorlief, the Seventh Circuit in Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 655 (7th Cir. 2001) (Posner, J.), clearly rejected the notion that courts should examine whether liquidated damages are punitive. As the Court explained, "while the ban on contractual penalties remains an established principle of the law of contracts, it is antiquated and should not be extended into ERISA-land [since i]t is easy to assign nonexploitive reasons for contractual penalties and hard to give convincing reasons why in the absence of fraud or unconscionability consenting adults ... should be prohibited from agreeing to such provisions." Id.; see also T&M Specialities, 2007 WL 2874819, at *5 (awarding liquidated damages without discussion); Fanning v. S.M. Lorusso & Sons, Inc., No. 02-CV-11859, 2004 WL 187330, at *4 n. 2 (D. Mass. Jan. 26, 2004).

to late-paid contributions requires "scrutiny of the facts and circumstances of each case").

Here, there has been no evidence submitted as to whether the harm caused is difficult to estimate nor whether there is a rational relationship between the damages and the harm suffered. There may be instances where inquiry into the propriety of liquidated damages may not be necessary if the amounts involved are <u>de minimis</u> or the formula for damages bear some proportionality to the delay in payment. However, the longest delay in payment prior to the filing of this suit was two months and the defendants are already being charged 18% interest, a substantially higher than market rate. <u>See Alliance Elec.</u>, 1992 WL 358072, at *8-*10 ("requiring the parties to develop a record in order to allow the Court to consider whether the combined effect of the liquidated damages provision and the interest provision is to penalize plaintiffs for delinquent contributions"). Thus, I recommend denying liquidated damages for contributions that were paid prior to the suit being filed without prejudice to a future showing that the contract provision meets the two requirements discussed above. <u>See Zacher</u>, 771 F. Supp. at 1334-35 (denying summary judgment as to applicability of liquidated damages provision).

I recommend awarding liquidated damages in the amount of the greater of interest on the unpaid contributions or 20 percent of the unpaid contributions as set forth below:

Interstate Payroll

| Pay Period | Unpaid or Late Payments | Liquidated Damages |
|---|---|---|
| 1/30/07 | $ 7,147.63 | $ 1,429.53 |
| 2/6/07 | $ 7,882.31 | $ 1,576.46 |
| 2/13/07 | $ 7,289.10 | $ 1,457.82 |
| 2/20/07 | $ 7,406.35 | $ 1,481.27 |
| 2/27/07 | $ 8,384.32 | $ 1,676.86 |
| 3/07 (5/21/07 ltr.) | $ 6,312.12 | $ 2,366.71 |
| 4/10/07 | $ 1,328.72 | $ 265.74 |
| 4/17/07 | $ 5,523.46 | $ 1,985.60 |
| 4/24/07 | $ 4,727.11 | $ 945.22 |
| 5/8/07 | $ 7,520.68 | $ 1,504.14 |
| 5/15/07 | $ 8,470.08 | $ 1,694.02 |
| 6/19/07 | $ 9,840.15 | $ 1,968.03 |
| 6/26/07 | $ 8,311.44 | $ 1,662.29 |
| 7/17/07 | $ 8,971.20 | $ 1,794.24 |
| 7/24/07 | $ 9,575.56 | $ 1,915.12 |
| 7/31/07 | $ 12,317.47 | $ 2,463.50 |
| 8/7/07 | $ 9,953.77 | $ 1,990.76 |
| 8/21/07 | $ 10,853.36 | $ 2,170.68 |
| 8/28/07 | $ 9,513.55 | $ 1,902.71 |
| 9/18/07 | $ 10,004.23 | $ 2,000.85 |
| 9/25/07 | $ 8,730.54 | $ 1,746.22 |
| 10/19/07 | $ 10,348.78 | $ 2,069.76 |
| 10/26/07 | $ 9,190.31 | $ 1,838.07 |
| **Total** | | **$ 39,905.60** |

Central Yankee

| Pay Period | Unpaid or Late Payments | Liquidated Damages |
|---|---|---|
| 9/06 (7/12/07 ltr.) | $        91.00 | $        37.68 |
| 10/06 (7/12/07 ltr.) | $     2,528.09 | $     1,140.00 |
| 11/06 (Dee, Jr.) | $     2,759.92 | $     1,198.16 |
| 11/06 (7/12/07 ltr) | $     2,799.85 | $     1,215.78 |
| 12/06 (Dee, Jr.) | $        96.30 | $        42.55 |
| 4/07 (Dee, Jr.) | $       943.60 | $       343.10 |
| 5/07 (7/12/07 ltr) | $       233.40 | $        84.00 |
| 6/19/07 | $     2,567.00 | $       513.40 |
| 6/26/07 | $     2,773.27 | $       554.66 |
| 7/17/07 | $     3,497.83 | $       699.57 |
| 7/24/07 | $     2,705.08 | $       541.02 |
| 7/31/07 | $     2,870.30 | $       574.06 |
| 7/07 (Dee, Jr.) | $       198.82 | $        60.80 |
| 8/14/07 | $     1,132.10 | $       226.42 |
| 8/21/07 | $     1,132.10 | $       226.42 |
| 8/28/07 | $     1,132.10 | $       226.42 |
| 9/18/07 | $     1,358.52 | $       271.71 |
| 9/25/07 | $     1,489.15 | $       297.83 |
| 10/16/07 | $     1,132.10 | $       226.42 |
| 10/23/07 | $     1,132.10 | $       226.42 |
| **Total** | | **$     8,706.42** |

D.   Attorneys' Fees and Costs

The Funds are also entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2)(D).  The award of attorneys' fees is mandatory.  See Labarbera v. Clestra Hauserman, Inc., 369

F.3d 224, 226 (2d Cir. 2004).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989). In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would

be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates are determined by examining the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190-91.

Plaintiffs' request for fees is based on rates of $275.00 per hour until May 1, 2007 and $300.00 per hour thereafter for counsel Avram H. Schreiber, $200.00 per hour for counsel Cristina Cruz and $70.00 per hour until May 1, 2007 and $80.00 per hour thereafter for paralegal Denise Dees. 12/12/07 Schreiber Aff. at ¶ 49; 12/19/07 Schreiber Aff. at ¶ 34. Although Mr. Schreiber's hourly rate is at the higher end of the applicable range, I find his regular billing rates of $275 and $300 per hour to be reasonable based on my knowledge of prevailing rates for such matters in New York. See LaBarbera v. D&R Materials, Inc., No. 06-CV-2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (approving rate of $340 per hour for attorney); LaBarbera v. ESL

Home Remodeling Inc., No. 06-CV-1372, 2007 WL 708359, at *6
(E.D.N.Y. Feb. 28, 2007) (awarding $275 per hour for Mr.
Schreiber); Mingoia v. Crescent Wall Sys., No. 03 Civ. 7143, 2004
U.S. Dist. LEXIS 16761, at *16 (S.D.N.Y. Aug. 23, 2004) (awarding
$325 per hour for attorney with at least ten years of ERISA
litigation experience).  However, I find the rate charged by Ms.
Cruz to be too high for a junior attorney with two years of
experience.  Accordingly, I respectfully recommend that Ms.
Cruz's regular rate be reduced to $150 per hour.  See ESL Home
Remodeling, 2007 WL 708359, at *6 (reducing junior associate's
rate to $150 per hour); King v. STL Consulting, LLC, No. 05 CV
2719, 2006 WL 3335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding
$100 per hour for associate admitted in 2005); LaBarbera v.
J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005)
(awarding associate $150 per hour).  I further recommend that the
paralegal's billing rates of $70 and $80 per hour be approved.
See ESL Home Remodeling, 2007 WL 708359, at *6 (awarding $70 per
hour for paralegal); Finkel v. Tech Man, No. 06-CV-2264, 2007 WL
433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for
paralegal).

Having reviewed the billing records submitted, I find that
the time spent on plaintiffs' case against Interstate Payroll,
23.44 hours by attorneys and 4.78 hours by paralegals, and the
time expended on plaintiffs' case against Central Yankee, 14.4
hours by attorneys and 3.42 hours by paralegals to be reasonable

in light of the work completed.  See Marton v. HST Roofing, Inc.,
No. 03-CV-4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22, 2007)
(awarding fees for 20 hours of attorney time and five hours for
paralegal time in ERISA default judgment case); LaBarbera v.
David Liepper & Sons, Inc., No. CV-06-137, 2006 WL 2423420, at *5
(E.D.N.Y. July 6, 2006) (finding 17.7 hours reasonable in ERISA
default judgment case); Del Turco v. Carrara Contractors, Inc.,
No. 03 CV 5538, 2006 WL 1783632, at *3-*4 (E.D.N.Y. June 23,
2006) (awarding fees for 25.05 hours for attorneys and 2.6 hours
for legal assistants in ERISA default judgment case).  Thus, I
recommend that the Funds be awarded $6,950.99 in attorney's fees
against Interstate Payroll and $4,308.67 against Central Yankee.

The Funds also seek $360.39 in costs against Interstate
Payroll and $354.10 in costs against Central Yankee, including
the court filing fee, service of process fees and the costs of
photocopying and postage.  Reasonable and identifiable out-of-
pocket disbursements ordinarily charged to clients are
recoverable.  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748,
763 (2d Cir. 1998); United States Football League v. National
Football League, 887 F.2d 408 (2d Cir. 1989).  On the other hand,
ordinary overhead expenses are not recoverable.  See LeBlanc-
Sternberg, 143 F.3d at 763.  Here, plaintiffs' request for costs
includes only recoverable litigation costs.  See Aston v.
Secretary of Health & Human Servs., 808 F.2d 9, 12 (2d Cir. 1986)
(photocopying and postage are reimbursable costs). Accordingly, I

recommend that plaintiffs be awarded $360.39 in costs against
Interstate Payroll and $354.10 in costs against Central Yankee.

    E.   <u>Injunctive Relief</u>

    Finally, plaintiffs seek a permanent injunction directing
defendants to comply with the terms of the CBA and Trust
Agreement, including allowing an audit of their books and
records.  Compl. at ¶ 6; 12/12/07 Schreiber Aff. at ¶¶ 52-54;
12/19/07 Schreiber Aff. at ¶¶ 37-39.  The Court "may issue an
injunction on a motion for default judgment provided that the
moving party shows that (1) it is entitled to injunctive relief
under the applicable statute and (2) it meets the prerequisites
for the issuance of an injunction."  <u>STL Consulting</u>, 2006 WL
3335115, at *8; <u>David Liepper</u>, 2006 WL 2423420, at *5; <u>see</u> <u>ESL</u>
<u>Home Remodeling</u>, 2007 WL 708359, at *6.

    As to the first requirement, injunctive relief is available
under section 1132(g)(2)(E), including an order compelling an
employer to submit to an audit of its books and records.  <u>See</u>
<u>Annuity, Pension, Welfare and Training Funds of Int'l Union of</u>
<u>Operating Eng'rs v. A.J.S. Trucking & Excavating Corp.</u>, 06-CV-
0701, 2007 WL 539152, at *3 (E.D.N.Y. Feb. 16, 2007); <u>Lanzafame</u>
<u>v. L&M Larjo Co. Inc.</u>, No. 03-3640, 2006 WL 2795348, at *9
(E.D.N.Y. Sept. 26, 2006).  Since defendants' defaults establish
their liability, plaintiffs have demonstrated the first
requirement for an injunction, actual success on the merits.
However, plaintiffs must also show irreparable harm and the

absence of an adequate remedy at law.  See <u>Ticor Title Ins. Co.
v. Cohen</u>, 173 F.3d 63, 68 (2d Cir. 1999).  Here, plaintiffs'
request for a permanent injunction fails because they have not
shown that monetary damages are inadequate to remedy future
violations.  See <u>LaBarbera v. Rockwala Inc.</u>, No. 06-CV-6641, 2007
WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007); <u>ESL Home</u>, 2007 WL
708359, at *7; <u>L&M Larjo</u>, 2006 WL 2795348, at *9; <u>David Liepper</u>,
2006 WL 2423420, at *6; <u>STL Consulting</u>, 2006 WL 3335115, at *9.
Even absent an audit, employing the Trust Agreement's provisions
and the additional ERISA remedies affords the Funds adequate
compensation for any unpaid contributions.  Therefore, I
respectfully recommend denying plaintiffs' request for injunctive
relief.


CONCLUSION

For the foregoing reasons, I recommend that the Court award
the Funds judgment against Interstate Payroll in the amount of
$69,190.60 based on the following total damages: (a) $12,025.92
for unpaid contributions; (b) $9,947.70 for pre-judgment interest
through March 31, 2009 and at a daily rate of $5.93 per day until
the date of judgment; (c) liquidated damages of $39,905.60; (d)
$6,950.99 in attorney's fees; and (e) $360.39 in costs.  As to
Central Yankee, I recommend that the court award judgment to
plaintiffs in the amount of $27,770.92 based on the following
damages: (a) $9,468.02 for unpaid contributions; (b) $4,933.71

for pre-judgment interest through March 31, 2009 and at a daily rate of $4.67 per day until the date of the entry of judgment; (c) liquidated damages of $8,706.42; (d) $4,308.67 in attorney's fees; and (e) $354.10 in costs. I further recommend denying the Funds' request for permanent injunctions against the defendants.

This report and recommendation will be filed electronically and a copy sent by overnight mail to the defendants on this date. Any objections to this Report and Recommendation must be electronically filed, with a courtesy copy sent to the Honorable Frederic Block and the undersigned within ten days of the date of this order. Failure to file objections within the specified time waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

     **SO ORDERED.**

Dated:    Brooklyn, New York
          March 16, 2009

                      /s/
                      MARILYN D. GO
                      UNITED STATES MAGISTRATE JUDGE